DRAKE COAL CO. *v.* CROZE.

1. EVIDENCE—CONTRACTS—SELF-SERVING DECLARATIONS.

It was error to admit in evidence, to corroborate a witness, a letter which he wrote at his hotel after interviewing defendant, tending to show that the parties did not execute a contract which defendant claimed to have made with him as agent for plaintiff.

2. SAME—HEARSAY—RES GESTÆ.

Self-serving declarations made by a party in his own favor to third persons, in the absence of the other party to the suit, are in general mere hearsay, especially when they merely narrate past occurrences, and constitute no part of the *res gestæ.*

Error to Houghton; Streeter, J.  Submitted February 24, 1911.  (Docket No. 107.)  Decided March 13, 1911.

Assumpsit by the Drake Coal Company against Joseph Croze for goods sold and delivered.  Judgment for plaintiff.  Defendant brings error.  Reversed.

*Allen F. Rees,* for appellant.

*Sheldon & Legris,* for appellee.

STONE, J.   This case was before this court in 1907, and will be found reported in 149 Mich. 60 (112 N. W. 715). It was sent back for a new trial, which has been had.

The plaintiff sued defendant for the price and value of a cargo of coal shipped by plaintiff to the defendant August 18, 1902.  Upon the second trial there was no dispute about the shipment of the coal, its receipt by the defendant, or the price; but defendant claimed that he had made a verbal contract with the plaintiff in June, 1902, under which contract the defendant agreed to buy, and the plaintiff agreed to furnish to defendant, his season's coal, not less than 4,000 tons and not more than 5,000 tons.  The coal to be furnished was from plaintiff's mine, and was known as " Massilon " coal.  Defendant at the time was, and had been for some years preceding, in the coal business at Houghton.  Two shipments of coal had been made by plaintiff to defendant.  The first cargo was received and paid for, and the second cargo was the one in question.  After it had been shipped and delivered, defendant called upon the plaintiff for further shipments, and plaintiff refused to furnish any more coal.  In this suit, by his pleadings and evidence, defendant claimed damages for a breach of the contract.  On the trial the plaintiff showed an order from defendant for the shipment of the coal sued for, the price, cost of insurance, etc., making at the time of the trial, with interest, $1,960.18.

Plaintiff's witness, J. M. Drake, who was the president of the plaintiff company, testified on cross-examination that the total of the two cargoes sent to defendant was 1,427.15 tons; that the defendant later applied for further shipment, and that plaintiff refused to ship any further, because it could not do so.  Defendant testified that in the spring of 1902 he made arrangements for his coal with said J. M. Drake, president of the plaintiff, at his, defendant's, office; that he there made a verbal contract with Mr. Drake, representing plaintiff, for his season's coal, 4,000 to 5,000 tons, and that Mr. Drake, the president,

agreed to furnish the same, and said: "I will give you all the coal you want." He further claimed that at that time it was arranged that the coal should be shipped as needed and ordered ·from time to time. Defendant further testified that at the time of making the said contract, and in the presence of Mr. Drake, he, defendant, made a memorandum in his office book as follows:

"Drake 5,000 to 4,000 Massilon, not less than 4,000 at $2.15, free on boat Cleveland. Monday, 9th of June."

This memorandum was offered and received in evidence without objection. The defendant's testimony was to the effect that he ordered subsequent shipments of coal which were refused, and he gave evidence tending to show the price which he was compelled to pay, and the damage which he suffered by reason of the alleged breach of the contract by the plaintiff. When recalled to the stand in rebuttal, Mr. Drake denied having made a contract for the season's coal with the defendant, and he denied that any memorandum was made in his presence, and the issue was squarely presented as to whether or not such contract was made.

On Mr. Drake's examination plaintiff's counsel offered in evidence a letter written on June 9, 1902, to the plaintiff company by Mr. Drake. It was written from the Douglass House in Houghton, and inclosed the order, some time after the witness saw defendant in the latter's office. This letter was objected to as incompetent and immaterial, but was received in evidence by the court, and an exception taken by defendant's counsel. The letter was as follows:

"DOUGLASS HOUSE, HOUGHTON, MICH., June 9, 1902.
"THE DRAKE COAL CO.,
        "Cleveland, Ohio.
" *Gentlemen:*
"I arrived here this a. m. at 5 o'clock. Rode all night in two sleepers. Had to change at 2 a. m. I have seen Croze. Took his order for about 700 tons and three cars Smithing on deck. Prices regular. He has had no Massilon this season."

In admitting this letter in evidence the trial court said:

"There is direct conflict in the testimony as to whether a certain contract is entered into. I think the actions of both parties regarding the transaction that did take place are admissible as tending to show whether such contract was entered into or not, and for that reason I will admit the letter."

- The jury disallowed the claimed defense of the defendant, and returned a verdict for the whole amount of the plaintiff's claim, and judgment was entered therefor. The defendant has brought error, and by his first assignment claims that the court erred in admitting in evidence the letter above quoted. The defendant also, in its fifth and sixth assignments of error, claims that the court erred in its charge to the jury in the use which it permitted the jury to make of said letter. On that subject the court charged the jury as follows:

"Now, whether or not there was a contract and what the contract was, will be for you gentlemen to determine, and you can determine it by considering the surrounding circumstances. On the one hand, you have the memorandum made by Mr. Croze at the time, as the testimony shows, and you have introduced in the testimony the order sent by Mr. Drake to the Drake Coal Company on the same day. Now, if the entry of the memorandum made by Mr. Croze shows his understanding of it, if you are convinced that that does show the understanding that he had, and the letter of Mr. Drake shows his understanding, his honest understanding of the contract, as a matter of law, I tell you there was no contract existing between these people at all."

The question is not before us whether or not the court erred in admitting in evidence the memorandum claimed to have been made by the defendant at the time of the contract, and in the presence of Mr. Drake, as it was received in evidence without objection on the part of plaintiff, presumably upon the ground that it was a part of the *res gestæ.* It will be observed, however, that the letter written by Mr. Drake to his company was written at his hotel after the transaction, and was simply a self-serving

statement made to the plaintiff by the plaintiff's president, detailing generally the transactions of the day.

The use which the court permitted the jury to make of this letter in the charge was, in our judgment, very damaging to the defendant. It permitted the jury to consider this letter as bearing upon the probability of the plaintiff's president having made the contract claimed by the defendant, and the jury were permitted to consider it as bearing upon the probabilities, as against the memorandum made by defendant at the time he claimed the contract was made. We are very clear that it was error to admit in evidence this letter. Had Mr. Drake orally stated to the secretary of his company that he had taken Mr. Croze's order for about 700 tons of coal, the statement would be no different in effect, or in character, or in legal force, as evidence than the letter which was introduced in evidence. Instead of talking to his secretary, or to his office, he sits down by himself and writes the statement in a letter. In either instance, whether spoken or written, such a statement is a self-serving statement, and is not competent evidence, either direct or corroborative, of what took place between Mr. Drake and Mr. Croze, and was inadmissible on the part of the plaintiff for any purpose whatever. It certainly cannot be claimed, in view of our numerous decisions, that a letter written under the circumstances here stated was a part of the *res gestæ*. *White* v. *City of Marquette*, 140 Mich. 310 (103 N. W. 698).

The rule that self-serving statements made in the absence of the opposite party, although with relation to the terms of the contract in question, are not admissible in evidence, is elementary.

" A party's own statements, oral or written, *a fortiori*, those distinctly self-serving, although the declarant was disinterested at the time of making his statement, are irrelevant when offered in favor of the declarant; and they are not rendered admissible by being part of a conversation or correspondence with the declarant's witness,

or with one sent by the opposite party, or with the adverse party himself or his agent, or by being brought to the attention of the other party or his agent and commented upon by him, or by being entered upon a book of account or other record, or brought out on cross-examination. But such evidence has been received where no better proof could be had. Such declarations are equally irrelevant when offered by the declarant's representatives. The rule of exclusion also applies when such declarations are offered in evidence by third persons on their own behalf." 16 Cyc. p. 1202.

"A corporation cannot, as a party, introduce as evidence the unsworn declaration in its favor of one of its officers." 16 Cyc. p. 1206, citing *Low* v. *Railroad*, 46 N. H. 284.

See, also, *Wilson* v. *Wilson*, 6 Mich. 9; *Jones* v. *Tyler*, 6 Mich. 364; *Ward* v. *Ward*, 37 Mich. 253, at page 257. In the last cited case this court said:

"A decedent's declarations were no more evidence for the defense here than they would have been for him in case he had lived and been the contestant, and surely he could not have proved his own mere declarations to third parties of his ownership, in order to establish his title against the claimant."

This court has repeatedly held that a self-serving statement is not admissible on behalf of the party making it, and that the corroborating of the party in a material part of the case by his own statement is not permissible. *Jones* v. *Village of Portland*, 88 Mich. 605 (50 N. W. 731, 16 L. R. A. 437); *Lord* v. *Savings Bank*, 132 Mich. 510 (93 N. W. 1063). This letter was but a narration of past occurrences, and was received in evidence as corroborative of witness Drake's testimony as to what the contract was. Its reception was error. *Dundas* v. *City of Lansing*, 75 Mich. 499 (42 N. W. 1011, 5 L. R. A. 143, 13 Am. St. Rep. 457).

Any declaration made by a party in his own favor to a third party, in the absence of the other party to the suit, are in general mere hearsay and not admissible.

This is especially so when they are merely narrative of past occurrences, and are no part of the *res gestœ*.

Upon this point plaintiff's counsel have cited the case of *Wilmoth* v. *Hamilton*, 127 Fed. 48 (61 C. C. A. 584), in the · U. S. circuit court of appeals in the third circuit. That was an action for the breach of an oral contract to sell plaintiff the output of defendant's coal mine at a certain price per ton; and a letter was written by the plaintiff to the defendant (not replied to) the day after.the contract was made, purporting to be a memorandum of the terms of the contract as understood by the plaintiff's agent. The court said, in speaking of this letter:

"We think it was not improperly admitted by the court below as being a written memorandum of the terms of the contract as understood by Adams, made immediately after its negotiation, not differing at all from his statement thereof in his oral testimony. At all events, we cannot see that even if its admission should be deemed technically improper, any injury resulted therefrom to the appellant, or that his case was at all prejudiced thereby."

It will be observed in the cited case that the letter was written to the opposite party, stating the terms of the contract and asking for a confirmation of the contract. Whether such letter was answered, or acquiesced in, might become very material. Such was not the purpose of this letter. We are constrained to hold that in the receiving of this letter in evidence, and in the use made of it by the court in its charge to the jury, there was error which in all probability affected the defendant. The case was a close one upon its facts, and permitting the jury to consider this letter as bearing upon the probabilities of the making of the alleged contract was prejudicial error, which probably did affect the verdict in the case. We find no other error in the record.

For the error pointed out, the case must be reversed, and a new trial granted.

BIRD, HOOKER, MOORE, and BROOKE, JJ., concurred.