SOUTH MEMPHIS LAND CO. v. McLEAN HARDWOOD LUMBER CO.

(Circuit Court of Appeals, Sixth Circuit. February 3, 1914.)

No. 2402.

1. DAMAGES (§ 175*)—BREACH OF CONTRACT—EVIDENCE.

In an action for breach of a contract to secure a belt line railroad connection leading to plaintiff's sawmill and lumber plant, evidence that the successful operation of the plant during its 6 years' operation by plaintiff had been seriously impaired by lack of such connection was admissible in connection with other proof that, because of lack of such connection, it had been unable to secure sufficient logs so that the plant, which would normally cut 20,000,000 feet annually, was only able to cut less than 9,000,000 feet.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 469–471; Dec. Dig. § 175.*]

2. CONTRACTS (§ 349*)—DOCUMENTARY PROOF—LETTERS.

In an action for breach of contract to secure for plaintiff a belt line railroad connection which plaintiff claimed had seriously handicapped its business, correspondence between plaintiff and railroad representatives, relating largely to shipments over the lines of two different railroads, mostly since the commencement of the suit, pertaining to plaintiff's reg*

ular daily business, and containing complaints about the service, were admissible to show that complaints were made, though they were not evidence that the facts stated therein were true, or that the complaints were justified.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1096, 1781–1784, 1788–1798, 1809, 1811–1814, 1817, 1818; Dec. Dig. § 349.*]

3. APPEAL AND ERROR (§ 1050*)—RULINGS ON EVIDENCE—PREJUDICE.
Where, in an action for breach of a contract to furnish a belt line connection with plaintiff's plant, there was oral testimony concerning delays and inconvenience to plaintiff in making both in and out shipments, defendant was not prejudiced by the admission of certain correspondence between plaintiff and certain railroad representatives, containing complaints concerning the service.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

4. APPEAL AND ERROR (§ 1051*)—REVIEW—PREJUDICE—CROSS-EXAMINATION.
Where, in an action for breach of a contract to furnish plaintiff belt line railroad connection, there was evidence of the entire number of cars of logs shipped over two railroads up to two or three months prior to. the second trial of the action, the average amount of lumber cut each year, and the proportion of logs brought in over such roads as compared to the total in-shipments, also the average amount of lumber carried per car, defendant was not prejudiced by the court's. refusal to permit plaintiff's manager to be cross-examined as to the number of cars which the railroads specified handled for plaintiff, in order to show that the complaints made by plaintiff to the representatives of the roads were infinitesimal in comparison with the volume of business done.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

5. APPEAL AND ERROR (§ 1051*)—REVIEW—EXCLUSION OF TESTIMONY—PREJUDICE.
Where, in an action for breach of a contract to provide belt line railroad connection for plaintiff's plant, it was not disputed that the belt line railroad was ready to build the connection and had been prevented only by injunction, and that the connection would be built as soon as the railroad company was authorized, defendant was not prejudiced by the exclusion of testimony that the railroad company was actively engaged in building its line into a street from which a connection with plaintiff's plant would be constructed, etc.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

6. DAMAGES (§ 140*)—EXCLUSIVENESS—CONTRACTS—BREACH.
Where shortly after defendant had agreed to furnish belt line railroad connection for plaintiff's plant the railroad company was enjoined from constructing its line over the right of way of another railroad, and was thereby prevented from furnishing the connection of which plaintiff was deprived for 8 years, during which the capacity of this plant was materially decreased, and it suffered great inconvenience with reference to both in and out shipments, a verdict awarding plaintiff $17,500 was not excessive on its face, because it appeared that the injunction had been ultimately dissolved, and that the connection would shortly be constructed.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 404, 405; Dec. Dig. § 140.*]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by the McLean Hardwood Lumber Company against the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

South Memphis Land Company. Judgment for plaintiff for $17,500, and defendant brings error. Affirmed.

See, also, 179 Fed. 417, 102 C. C. A. 563.

Luke E. Wright and K. D. McKellar, both of Memphis, Tenn., for plaintiff in error.

T. K. Riddick, of Memphis, Tenn., for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SATER, District Judge.

KNAPPEN, Circuit Judge. Plaintiff, who is defendant in error here, sued to recover damages for breach of defendant's agreement, to secure, by February 1, 1906, to plaintiff's sawmill plant in Memphis, Tenn. (the site for which was contemporaneously purchased from defendant), a track connection with the Union Railway, which was a belt line. The breach is not denied. Defendant had negotiated with the Union Railway Company a contract, afterwards executed, for the construction by the latter of its main track upon defendant's land, including the locating of the line upon Railroad avenue, adjacent to plaintiff's sawmill site, as well as the construction, on defendant's request, of spur tracks from the main line to any industry located on defendant's tract (which would include plaintiff's site)—

"provided the business to be obtained by the railway company by the construction of such spur tracks will be sufficient in the opinion of the managing officer of said railway company."

The defense, among others, was made that the Union Railway Company was ready, within the time provided by defendant's contract sued on, to make the connection, but was prevented therefrom by a temporary injunction issued from the equity side of the court below at the suit of the Illinois Central Railroad Company, forbidding the Belt Line to cross the Illinois Central tracks at grade. At the time of the first trial the injunction suit had not been heard upon its merits, and the temporary injunction was still in force. The trial court rejected the defense stated, and permitted recovery of verdict and judgment for plaintiff, the measure of damages adopted being the difference between the value of the sawmill plant with and without the guaranteed Belt Line connection. This court sustained the action of the trial court in rejecting the defense referred to, and approved generally the measure of damages adopted, holding that the jury was not required to take into account the contingency of defendant's ultimate compliance with its agreement, for the reason that plaintiff was suing for and was allowed to recover damages once for all, and the judgment in plaintiff's favor would thus effectually relieve defendant from further liability under its guaranty. We thought, however, that the jury should take into account the contingency of plaintiff's being able, independently of the defendant's agency, to obtain the desired connection; and, because we thought the jury might have understood from the charge that they were not to take that contingency into account, and for this reason alone, we reversed the judgment and directed a new trial (see 179 Fed. 417, 102 C. C. A. 563, where the material facts are fully stated). The last trial was confined to the question of dam-

ages. Plaintiff recovered verdict and judgment for $17,500. The charge is not criticized; the errors presented relate only to the admission and rejection of testimony. After the last trial of the instant case, the district court rendered final decree in the injunction proceeding, perpetually enjoining the Union Railway Company from crossing the Illinois Central tracks at grade, permitting, however, an underpass upon certain conditions. This court reversed the decree of the district court, with instructions to dismiss the injunction bill. Union Ry. Co. v. Illinois Central R. R. Co., 207 Fed. 745, 125 C. C. A. 283.

[1] Upon the trial now under review plaintiff presented testimony tending to show that the successful operation of the plant had, during its nearly six years' experience, been seriously impaired through the lack of the Union Railway connection. This testimony, considered in connection with other proof, had a material bearing upon the value of the plant with and without the connection. There was testimony tending to show that but for this lack of connection, resulting in inability to get in sufficient logs, the plant would normally have cut about 20,000,000 feet annually, instead of less than 9,000,000 according to actual experience; also that there had been serious difficulties in making out-shipments of lumber, due to the same general cause.

[2] Plaintiff offered a bundle of correspondence between it and railroad representatives, relating largely, if not entirely, to shipments over the Illinois Central and the Yazoo & Mississippi Valley Railroads, mostly since the commencement of suit. This offer was accompanied by testimony that the letters pertained to the "regular daily business of the company," and were written without reference to pending litigation. They were objected to because written after the breach of the contract, and as incompetent because in the nature of self-serving declarations, and error is assigned upon their admission. The letters were competent evidence of the mere fact that complaints were made. 3 Wigmore on Evidence, § 1768, p. 2274. They were not, however, competent evidence of the truth of the facts stated in them (Drake Coal Co. v. Croze, 165 Mich. 120, 130 N. W. 355; Woolsey v. Haynes [C. C. A. 8] 165 Fed. 391, 397, 91 C. C. A. 341); and, if it fairly appears that they were admitted as evidence of the truth of their contents, there was technical error. We doubt if the record should be construed as giving the letters the effect last stated. The court ruled that "they could only go in as showing what the reasonable situation or location of this mill has been," and shortly afterward spoke of the letters as "just [merely] complaints about the service." They were not mentioned in the charge, and our attention is not called to any reference to them in the record subsequent to their admission. If defendant wished the jury instructed as to their limited scope and effect, it would have been proper to ask such instruction. This was not done.

[3] But, assuming that there was technical error in admitting the letters, we think it unlikely that prejudice could have resulted, in view of the oral testimony, independently of the letters, concerning delays and inconveniences in making both in and out shipments.

[4] Error is also assigned upon the court's refusal to permit plaintiff's manager to be cross-examined as to the number of cars which

SOUTH MEMPHIS LAND CO. V. M'LEAN HARDWOOD LUMBER CO.    261

the Illinois Central and the Yazoo & Mississippi Valley Railroads handled for plaintiff, defendant's counsel urging that:

"It shows [possibly meaning 'would show'] that the complaints are infinitesimal in comparison with the volume of business done."

It seems clear that the refusal was nonprejudicial. The record elsewhere shows specifically the entire number of cars of logs shipped over these two roads up to two or three months before the last trial began. The average amount of lumber cut each year also appears, as does also the proportion (more than eight-ninths) of logs brought in over the Illinois Central and the Yazoo & Mississippi Valley as compared to the total in-shipments, also the average amount of lumber carried per car. There seems fair room for implication that the logs shipped in over these two roads were in large part, at least, shipped out over the same roads in the form of lumber. These facts would seem to afford substantial data for the desired comparison.

[5] Complaint is made of the exclusion of testimony proffered in mitigation of damages, tending, as claimed, to show that the connection in question would soon be made. This offered testimony included: (a) That of defendant's president, to the effect that the Union Railway Company was actively engaged in building its line into Railroad avenue, in accordance with its contract with defendant, when the former was enjoined from crossing; (b) that of the Union Railway Company's president, to the effect that that company was willing and able to build its line into plaintiff's plant whenever allowed to do so; and (c) the complete record in the injunction proceeding, including testimony and final decree.

We think these exclusions were not prejudicial. The readiness of the Union Railway to build its line, and the fact that it was prevented only by the injunction, do not seem to have been disputed, and indeed seem to have been either asserted or taken for granted by both parties. Defendant's manager testified, without objection, that the Union Railway's "steel crossings * * * have been on the ground three years ready to be put in"; and plaintiff's manager testified that defendant's president assured him that as soon as certain expense connected with the crossing was settled the Union Railway would come across. If the decree in the injunction suit had any reasonable tendency to show a probability that an underpass at least would be built under the terms of that decree, the tendency was remote, for the Union Railway might or might not accept the permission to so build. The proposed testimony of the Union Railway's president added nothing of substantial value to what was already in, for it scarcely amounted to more than an assertion that that company was prepared to carry out its contract with defendant, and compliance therewith was not only to be presumed, but readiness to comply does not seem to have been actually controverted. We say this because it was naturally to be assumed that the Union Railway, once allowed to enter Railroad avenue, would immediately build a spur to as prominent a shipping plant as is plaintiff's.

[6] It is strongly urged that the record shows on its face that an unjust result has been reached, that but for the erroneous issue and

continuance of the injunction, with which defendant was not connected, and for which it was not responsible, its contract with plaintiff would have been fulfilled, and that it has thus been subjected to damages whose excessiveness specially appears by the final disposition of the injunction proceedings, which makes probable an early supplying of the connection contracted for. But plaintiff has already been deprived of the connection for nearly eight years; and it cannot rightfully be said that there was not substantial evidence sustaining the verdict, even on the assumption of but eight years' deprivation. While defendant is without moral fault with respect to this delay, plaintiff is equally innocent; and it need not be said that, as between the parties before us, contract rights and liabilities must govern. The discussion contained in our previous opinion would seem to render further elaboration unnecessary. While we have not discussed all the errors assigned, we have carefully considered them all, and are of opinion that no error has been committed to defendant's prejudice.

The judgment of the district court is accordingly affirmed, with costs.