## WALSH *v.* BACKUS.

1. WILLS—LIFE INTEREST—WIDOW'S ESTATE IN PERSONALTY.

Decedent directed by his will that the widow should have the use of real and personal property in his estate during her lifetime, with "full power to sell, convey or exchange any or all of said property, real or personal, and without any restrictions whatever as to the amount of said personal property she shall use for her support and benefit, should she need the same, owing to sickness or other emergency which would require the use of more than the income." The testament provided for the division of his real estate after the death of the widow. It was provided that after her death and the payment of her funeral expenses and certain bequests, complainant, executrix and daughter, should have the residue of the estate. Testimony was offered to show that the widow had admitted the estate was entitled to $2,000 in certificates of deposit in her hands in the name of the estate. *Held,* in a suit for the construction of the instrument and to determine whether funds accumulated by her and deposited in bank evidenced by such certificates of deposit

in her possession at the death of said widow belonged to the husband's estate, that the evidence sustained the decree of the lower court in determining that the $2,000 in certificates of deposit belonged to the husband's estate 'and should be accounted for, that the decree was wrong, however, in so far as it attempted to charge her estate with a larger amount. *Held,* also, that the testimony failed to support defendant's claim that the widow did not collect certain notes due to the estate.

2. SAME—BEQUESTS—CONSTRUCTION.

At most the provisions of the will conferred upon the widow the use of the personal property with the right to part of the principal, if necessary. The right to the use and custody of the property is to be inferred from this testamentary clause.

3. SAME—EVIDENCE—HEARSAY—SELF-SERVING STATEMENTS.

A statement in writing by the widow to her attorney, not made in complainant's presence, showing her claims as to property owned respectively by her and received from the estate, was inadmissible and hearsay: it could not be considered in support of the claim made by her administrator.

4. SAME.

*Held,* that the testimony established the fact that the widow of testator made a will cutting off complainant with a nominal amount, but that she later destroyed it.

5. SAME—DEVISE—DESCENT.

Under a clause in the will bequeathing to the daughter of complainant upon the decease of testator's widow "all property of every nature and description which shall remain after the payment of the bequests from the sale of the farm and city property hereinbefore mentioned," it could not be urged that only the sums which remained out of the proceeds of such sales should belong to the daughter, and that she should share with the other heirs in the residue of the body of the estate.

6. SAME—EXPENSES OF SICKNESS.

Not only was the estate chargeable with the expenses of the widow's funeral, but it should also be charged with the expenses of her last sickness.

Appeal from Eaton; Smith, J. Submitted October 12, 1914. (Docket No. 68.) Decided December 19, 1914.

Bill by Alice Walsh, executrix of the estate of Christopher Glenn, deceased, against Dwight Backus, administrator of the estate of Sarah Glenn, deceased, and the Loan & Deposit Bank of Grand Ledge. From a decree for complainant, defendant Backus, administrator, appeals. Modified and affirmed.

*Elmer N. Peters (Raymond A. Latting,* of counsel), for complainant.

*Jason E. Nichols (J. M. C. Smith,* of counsel), for defendant.

STONE, J. The bill of complaint in this cause was filed to obtain a construction of the last will and testament of Christopher Glenn, deceased, and for an accounting. Christopher Glenn died in February or March, 1901, the exact date not being shown by the record. He left a will dated February 7, 1901, which was duly admitted to probate. That part of the will relevant to this controversy, is as follows:

"After the payment of my funeral expenses, expenses of last sickness, if any, and any lawful debts which I may have contracted, I give and bequeath to my beloved wife, Sarah Glenn, all property, real and personal and mixed, of which I may die seized or possessed, she to have, hold, use and enjoy the same for and during the term of her natural life, with full power to sell, convey or exchange any or all of said property, real or personal, and without any restrictions whatever as to the amount of said personal property she shall use for her support and benefit should she need the same owing to sickness or other emergency which would require the use of more than the income from said real and personal property.

"After the death of my beloved wife, I direct that the farm or one hundred acres owned by me in the township of Oneida, Eaton county, Michigan, be sold, provided the same has not been sold before that date by my said wife, and the proceeds from the sale of said farm to be divided as follows, when sold: Two-

thirds of the proceeds from said sale I give, grant and bequeath to my daughter, Alice Walsh, and the remaining one-third of said proceeds I give, grant and bequeath to Christopher Glenn, Jr., Ellen Teaman, Sarah Trumbull and Mary McMullen, to be divided between them, share and share alike.

"After the death of my beloved wife I direct that the property owned by me in the city of Grand Ledge, where I reside, be sold, provided the same has not been sold before that date by my wife and the proceeds from the sale of said city property when sold be divided equally between William T. Glenn and Alice Walsh, share and share alike.

"After the death of my beloved wife and the payment of her funeral expenses, I give, grant and bequeath to my daughter, Alice Walsh, all property of every nature and description which shall then remain after the payment of the bequests from the sale of the farm and city property hereinbefore mentioned.

"I hereby nominate my daughter, Alice Walsh, as executrix and John Strange as executor of this my last will and testament, with full power and authority to sell and convey any real estate of which I may die seized under the direction and with the consent of my wife, for the purposes of division herein stated."

Complainant is the daughter, and also the executrix of the will, of said Christopher Glenn, deceased. The defendant Backus is the administrator of the estate of Sarah Glenn, deceased, who was the mother of complainant, and the wife of Christopher Glenn, deceased. The real estate owned by Christopher Glenn at the time of his death is not involved in this suit, all of it having been sold and the proceeds divided between the beneficiaries named in his will, by mutual agreement between them.

It is the claim of the complainant that by the terms of the will of Christopher Glenn, his wife, Sarah, had the right to the possession, use, and control during her life of the personal property belonging to his estate, and to have the same turned over to her by the com-

plainant; that, when complainant did turn all of this property over to Sarah Glenn, the latter did not become the absolute owner of it, but whatever remained after her death belonged to the estate of Christopher Glenn, deceased, and complainant, as such executrix, has the right to reduce the same to her possession, to the end that she may close the estate of Christopher Glenn, deceased. Acting in accordance with this view, the complainant, upon the probate of said will, proceeded to inventory the estate, totaling $8,823.67, of which $5,700 was real estate. She presented her account to the probate court, which was duly allowed, and on November 15, 1901, the property, real and personal, was turned over to her mother, Sarah Glenn, less the sum of $794.90, which had been allowed to complainant as paid in settlement of claims against the estate, and expenses of administration. At the same time Sarah Glenn receipted to complainant for personal property, including cash, notes, and a real estate mortgage, amounting to $2,328.77, which receipt was in the following words and figures:

"GRAND LEDGE, November 15, 1901.
"Received of Alice Walsh, executrix of the last will and testament of Christopher Glenn, deceased, the sum of three hundred and fifty-eight dollars and seventy-seven cents in cash, and the following personal property, to wit: Notes of Thomas A. and Louisa Walsh, aggregating face value eight hundred fifty dollars; a real estate mortgage of eight hundred dollars given by Charles G. Allen; notes of J. G. Smith, aggregating one hundred twenty dollars, face value; a note of Christian F. Maier for two hundred dollars —being all the personal property of every nature and description belonging to the estate of Christopher Glenn, deceased.
"[Signed] SARAH GLENN" (by her mark).
"Witness to mark:
"W. R. CLARKE,
"R. A. LATTING."

It is not seriously contended that Sarah Glenn had

anything more than a life estate or interest in the personal property left by Christopher Glenn, deceased. By the will it was clearly intended to give her at most the use of the personal property during her life, and there was present the intent and expectation that she might use some of the principal, if necessary. This implied custody and the right to use. *Gee* v. *Hasbrouck,* 128 Mich. 509-513 (87 N. W. 621) ; *Michigan Trust Co.* v. *Hertzig,* 133 Mich. 513 (95 N. W. 531).

It is the claim of complainant that from November 15, 1901, until her death, on February 15, 1911, Sarah Glenn had all of the personal property of the estate of Christopher Glenn in her possession, and managed and controlled it, and that she had also the income from the real estate until it was finally sold and the proceeds divided among the persons to whom it was devised by the said will. She also drew a pension of $144 a year from the United States.

Previous to the 15th day of November, 1901, Sarah Glenn had on deposit in the bank of the Loan & Deposit Bank of Grand Ledge the sum of $940. From that time on her deposits increased, so that at the time of her death she had certificates of deposit issued by this bank amounting to $4,200. Twenty-two hundred dollars of this amount was represented by certificates in her own name, and $2,000 in two separate certificates, numbered respectively 45,536 and 45,537, of $1,000 each, dated January 2, 1911, in the name of Christopher Glenn estate. The undisputed testimony of the cashier of the bank was that, at the time Sarah Glenn took the $2,000 in certificates in the name of the estate, she stated to him that there was at least that much money belonging to the Christopher Glenn estate in her hands. Before that time the money had been in the bank in her name, and she changed the certificates as above indicated.

The claim of the defendant Backus is that Sarah

Glenn could not read or write, signing her name by her mark. While this is true, yet the undisputed evidence is that she was an intelligent, thrifty, and economical woman, and understood her business affairs. It is further claimed by said defendant:

*First.* That the greater portion of the personal property turned over to her on November 15, 1901, by complainant, and especially the notes of Thomas A. Walsh and Louisa Walsh, amounting to $850, were delivered to complainant by Sarah Glenn soon after they were receipted for, and that Sarah Glenn never had any of the money paid by Thomas A. Walsh.

*Second.* That the Smith note of $100 and $215 out of the Allen mortgage had already been turned over to complainant.

*Third.* That the said Sarah Glenn was unduly and fraudulently induced to change the two certificates, of $1,000 each, just before her death, into the name of "C. Glenn Estate," and that the money represented by the certificates was the money of Sarah Glenn, and not the money of the C. Glenn estate.

*Fourth.* That in March, 1907, Sarah Glenn, realizing the efforts being made by complainant to get her money away from her half-brothers and half-sisters, went to an attorney and made a property statement, and a will in which she cut off complainant with $1.

*Fifth.* That the paragraph in the said will reading:

"After the death of my beloved wife, and the payment of her funeral expenses, I give, grant and bequeath to my daughter Alice Walsh, all property of every nature and description which shall remain after the payment of the bequests from the sale of the farm and city property hereinbefore mentioned"—

should be interpreted to mean, solely, the proceeds from the sale of the farm and city property in Grand Ledge, and that complainant should stand as one of

six heirs in the distribution of what was left by Sarah Glenn.

*Sixth.* That, as the estate of Christopher Glenn is not closed, said estate should not only be charged with the funeral expenses of $236, but should also be charged with the last sickness account of Sarah Glenn.

We will consider the several questions in the order presented.

1. After a careful reading of the record, we cannot agree with the claim of counsel here made. The evidence offered in support of the claim is so indefinite and unsatisfactory that we cannot be governed by it. Of the statement of Sarah Glenn we shall speak later.

2. Counsel for defendant concedes that as to this proposition it finds support only in the statement of Sarah Glenn, made to the attorney who drew her will. That this unsigned statement was self-serving in its character cannot be doubted. It was not made in the presence of complainant, and must be held to be a statement made by Sarah Glenn in her own interest. *Drake Coal Co.* v. *Croze,* 165 Mich. 120 (130 N. W. 355.). In *Ward* v. *Ward,* 37 Mich., at page 257, it was said:

"Decedent's declarations were no more evidence for the defense here than they would have been for him in case he had lived and been the contestant and surely he could not have proved his own mere declarations to third parties of his ownership in order to establish his title against the claimant."

See, also, collection of authorities on this subject in *Freda* v. *Tishbein,* 174 Mich. 391-397 (140 N. W. 502, 49 L. R. A. [N. S.] 700).

3. We find no evidence to support this claim. Sarah Glenn visited her banker on two occasions upon the subject of the change of certificates. Her statements there were certainly statements or admissions against her own interest, and in the absence of other evidence must be held to be binding upon her and her estate.

Not only did she say that she had at least this sum in her hands belonging to the estate of Christopher Glenn, deceased, but she directed the cashier to change the certificates, and they were found among her papers after her death. We are of opinion that the circuit judge was right in holding that these certificates represented money belonging to the estate of Christopher Glenn.

4. While the evidence shows that Sarah Glenn made such a will, it as clearly shows that she afterwards destroyed the will, and died intestate.

5. We are unable to agree with counsel for defendant that the clause of the will quoted refers to proceeds of the real estate. The will clearly provides that *all* of the proceeds of the real estate should be specifically disposed of. Two-thirds of the proceeds of the farm were to go to complainant, and the remaining one-third to Christopher Glenn, Jr., Ellen Teaman, Sarah Trumbull, and Mary McMullen, share and share alike. The proceeds from the sale of the other piece of real estate were to be divided equally between William T. Glenn and complainant. It is therefore manifest that there could be no residue of proceeds from the sale of the real estate, and the term "all property of every nature and description which shall then remain" cannot be held to refer to proceeds from the sale of the farm and city property. It must refer to the residue of personal property, or be ineffective.

6. We quite agree with counsel for defendant Backus that under the terms of the will the estate of Christopher Glenn, deceased, should be charged with the funeral expenses of Sarah Glenn. The amount thereof is $236. We think the same rule should apply to the account for expenses of her last sickness. The only evidence on the subject of the amount of the latter is that of the probate register, who testified that

it was $65.97.  This sum should be added to $236, making $301.97 to be paid by complainant out of the moneys received by her as the proceeds of the two certificates of deposit above described.

We cannot agree with the circuit judge as to the $500 item.  We find no evidence to warrant us in holding that complainant is entitled to more than the amount represented by the two certificates of deposit standing in the name of the Christopher Glenn estate. Those certificates should be turned over to complainant by the defendant Backus, and the principal and accumulated interest thereon should, upon presentation by complainant, be paid by defendant the Loan & Deposit Bank of Grand Ledge.

The decree of the circuit court, as thus modified, will be affirmed, and the defendant Backus will recover against complainant the costs of this court, to be taxed.

McALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.