## BAUMGARDNER v. HENRY.

1. PAYMENTS—CHECKS—EVIDENCE.

Where, in an action on an account, defendants alleged payment by a check drawn by them to plaintiffs, it was not error to admit in evidence the check, stamped "Paid" by the bank, though there was no indorsement on it; it appearing that the bank had paid other checks drawn by defendants without requiring the indorsement of the payee.

2. SAME—HEARSAY.

The check was paid by the banker's son during the banker's absence. *Held*, that the latter's testimony as to what his son told him as to who presented the check was properly excluded as hearsay.

3. SAME.

A letter from the banker to defendants, saying that the check was evidently presented by the plaintiffs' traveling agent, was inadmissible for the same reason.

4. SAME.

And the testimony of a third person as to what occurred between the father and son on the former's return to the bank, none of the parties to the suit being present, was likewise inadmissible.

5. SAME—EFFECT OF MAILING CHECK.

An agreement between a seller of goods and the buyer that payment may be made by check does not make the mere mailing of a check a payment, irrespective of the questions of receipt by the payee and payment by the bank.

Error to Calhoun; Smith, J.   Submitted April 25, 1902.
(Docket No. 78.)   Decided June 24, 1902.

*Assumpsit* by Leander S. Baumgardner and another, copartners as L. S. Baumgardner & Co., against Horace E. Henry and another, copartners as Henry Bros., for goods sold and delivered.   From a judgment for defendants, plaintiffs bring error.   Reversed.

*L. H. Sabin* and *H. P. Stewart*, for appellants.

*L. B. Tompkins* and *F. W. Clapp*, for appellees.

MOORE, J.   The plaintiffs are wholesale dealers in dry goods and notions doing business at Toledo, Ohio.   They sold a line of goods to defendants, who were then doing business at Milford, Ind.   This suit is brought to recover a balance due of $140.51.   It is the claim of defendants that they were entitled to certain discounts, after deducting which there remained unpaid the sum of $134.10, and that this balance was paid by sending to plaintiffs, through the mail, a check reading as follows:

"$134.10.            MILFORD, IND., Sept. 2, 1899.
"Miles & Higbee, Bankers:   Pay to L. S. Baumgardner & Co., or order, one hundred thirty-four 10-100 dollars.                              HENRY BROS."

This check was stamped and marked "Paid" by Miles & Higbee, bankers, the paid stamp not showing date, however.   No indorsements appear on said check, and no marks showing that it had passed through any bank except the drawee; it having been paid over the counter of Miles & Higbee, whose place of business is at Milford, without indorsement.   It was the claim of defendants that they had sent checks several times before this, which had been received as payments, and this check was sent with the understanding it was to be received as payment.   It was their further claim that the check was paid to the plaintiffs or their agent.   These claims of defendants are denied by the plaintiffs, who claim the check was paid to one of the

131 MICH.—16.

defendants. The payment seems to have been made by a son of Mr. Higbee, who at the time of the trial was in Indiana, but was not called as a witness. The jury rendered a verdict in favor of defendants. The case is brought here by writ of error.

It is claimed that, as the check was not indorsed, it was error to admit it in evidence. The record discloses that Miles & Higbee had paid a number of checks drawn by the defendants to the payees without requiring the checks to be indorsed. In view of the claims of the respective parties, we think it was not error to admit this check in evidence. To say the least, it was a link in the chain of evidence which defendants were entitled to make in their effort to establish their defense.

The defendants called as their witness Mr. Higbee. His testimony disclosed that the cash book kept by the bank showed the check was paid September 7th, and the amount thereof was charged to defendants. He testified it was paid by his son during Mr. Higbee's temporary absence from the bank; that he saw the check on the spindle. An attempt was made on the cross-examination to show what the son told the father as to who presented the check. On the objection of the defendants, this testimony was very properly excluded. After this was done, the defendants were allowed to introduce in evidence a letter from Mr. Higbee, in which it was stated the check was evidently presented by the traveling representative of the plaintiffs. This was clearly hearsay, and incompetent. It was not a trial between the defendants and the bankers, so that the letter could be treated as an admission. Mr. Higbee was not present when the check was paid. He knew nothing about it, except what he had been told. The statements in the letter were based on hearsay.

Error is assigned on the exclusion of the testimony of Dr. Patterson. He had testified to the presence of one of the defendants in the bank, and to his getting money, on the presentation of a paper, from young Higbee, in the temporary absence of his father. It was sought to show by him

what conversation occurred between the father and the son when Mr. Higbee returned to the bank. This conversation did not occur in the presence of either of the defendants, and was properly excluded. If Dr. Patterson saw the paper which was presented, and could identify it as the check in question, it would have been proper for him to so testify.

The other questions necessary to be discussed relate to the charge of the court. Among other things he told the jury:

"The defendants claim they sent the check through the mail under an arrangement that they should pay plaintiffs for goods purchased of plaintiffs by sending their personal check on the Milford Bank by mail in payment; and if you find it was understood that the defendants should send their check by mail to the plaintiffs, and were directed to do so by the plaintiffs, the defendants then would be discharged from liability by properly depositing the same in the post-office, inclosed in an envelope duly addressed to the plaintiffs at their usual place of business in Toledo, Ohio, with the postage prepaid, because in that case the plaintiffs would make the post-office employés their agents, and would assume all risk of the check's getting into other hands, and being paid to some other person."

We think this charge was misleading. In *National Life-Ins. Co.* v. *Goble,* 51 Neb. 5 (70 N. W. 503), it is said:

"The payment of the premium is not claimed except by the draft forwarded to the agents of the company. In regard to this claim, it is the established rule that a draft or check is not a payment of a debt, in the absence of an express agreement that it is taken or received in payment. It is but a means by which payment may be obtained. It is conditional upon its being honored when presented, and, if dishonored when presented, it effects no payment of the debt for which it was drawn, unless there was an express agreement that it was to be accepted or received in payment. 2 Greenl. Ev. § 520; 2 Dan. Neg. Inst. § 1262; 2 Morse, Banks, § 543; 18 Am. & Eng. Enc. Law, 167; *Born* v. *Bank,* 123 Ind. 78 (24 N. E. 173, 7 L. R. A. 442, 18 Am. St. Rep. 312); *Mullins* v. *Brown,* 32 Kan. 312

(4 Pac. 305); *National Bank of Commerce* v. *Railroad Co.*, 44 Minn. 224 (46 N. W. 342, 560, 9 L. R. A. 263, 20 Am. St. Rep. 566); *Holmes* v. *Briggs*, 131 Pa. St. 233 (18 Atl. 928, 17 Am. St. Rep. 804); *League* v. *Waring*, 85 Pa. St. 244. The fact that the agent of the company acknowledged the receipt of the draft, and forwarded to the defendant in error his renewal receipt, was not conclusive. The draft, when presented, was dishonored; hence there was no payment, and the receipt was of no force. 18 Am. & Eng. Enc. Law, 170, note in second column; *Weaver* v. *Nixon*, 69 Ga. 700; *Fleig* v. *Sleet*, 43 Ohio St. 53 (1 N. E. 24, 54 Am. Rep. 800); *Weddigen* v. *Fabric Co.*, 100 Mass. 422.

"We will next give our attention to the notice sent by the agents to defendant in error, by which they informed him of the approaching maturity of the insurance premium, and requested that a remittance be made, such request being in terms as follows: 'Please remit by bank draft, registered letter, express or post-office money order.' It has been argued that this amounted to a direction relative to the manner of the remittance, a compliance with which on the part of defendant in error, as to the manner or medium of remittance therein indicated, constituted the remittance a payment of the premium, regardless of the ultimate outcome, or whether the agents or company, as a result of such action of defendant in error, subsequently received the money or not. The statement quoted from the notice amounted to a request at most, and was not binding upon the defendant in error. It might have been wholly disregarded; but compliance with it in any one of the ways or means suggested for the transmission of the amount necessary to meet the payment soon to be due was sufficient to entitle the defendant in error to claim such rights as thereby arose in his favor under the rules of business and law applicable thereto, but none other or further. He chose to remit by draft purchased at any bank of his own selection, to be drawn payable by any bank and at any place he chose to designate, and thereby placed the transaction and his rights thereunder within the rule that it was not a payment of the premium until the draft was received, presented, and honored."

Giving the fullest effect to the testimony of the defendants, it did not amount to an express agreement that the mailing of the check should be equivalent to a payment.

Nothing was said about the amount of the check, or the bank upon which it was drawn. There was nothing in the conversation to indicate that the sending of checks was to take the check out of the rule of law applicable to the giving of checks by the debtor and the receiving of them by the creditor.

The court also charged the jury as follows:

"If you find that, in the usual course of dealings between the parties to this suit, they allowed defendants to send their check by mail to the plaintiffs, this would be an assent on the part of the plaintiffs, and an authority on the part of the plaintiffs could thus be inferred; and in such case, if the defendants mailed their check to the plaintiffs at their usual place of business, with postage prepaid, and properly addressed, and such check was afterwards paid by the bank on which such check was drawn, and charged to the defendants' account, this would operate as a discharge of the debt to the amount of such check, provided it was not paid to the defendants or one of them."

We do not think this is a proper statement of the law, as will appear by what is said above. See 18 Am. & Eng. Enc. Law (1st Ed.), 167–173; *National Bank of Commerce* v. *Railroad Co.*, 44 Minn. 224 (46 N. W. 342, 560, 9 L. R. A. 263, 20 Am. St. Rep. 566); *Comptoir D'Escompte de Paris* v. *Dresbach*, 78 Cal. 15 (20 Pac. 28); *In re Bennett's Estate*, 52 Mich. 415 (18 N. W. 195); *Williams* v. *Carpenter*, 36 Ala. 9 (76 Am. Dec. 316).

Judgment is reversed, and new trial ordered.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.