CASE 22—ACTION BY NANNIE POWAR AND BY MARY EL-
LIOTT AGAINST THE NATIONAL CASKET COM-
PANY.—February 25, 1910.

## National Casket Co. v. Powar—Same v. Elliott

Appeals from Marion Circuit Court.

I. H. THURMAN, Judge.

Judgments for plaintiffs in each action, defendant
appeals.—Reversed.

1.  Highways—Regulation of Vehicles—Statutes.—Ky. St., sec.
    2739g, limiting the speed of automobiles approaching the in-
    tersection of highways and requiring warnings on approach-
    ing travelers, is declaratory of the common law of negli-
    gence, and adds to it certain standards of care on the part
    of operators of automobiles, and a violation thereof is negli-
    gence per se, and forms a sufficient basis for an action for
    injuries caused thereby to another using the highway.
2.  Highways—Regulation of Vehicles—Statutes.—An operator
    of an automobile who saw, or by ordinary care could have seen
    a horse and vehicle on a highway ahead of him, was re-
    quired by Ky. Stat. sec. 2739g, to give warning of his ap-
    proach and to use every reasonable precaution to insure the
    safety of occupants of the vehicle; and evidence that he did
    not give any warning, that he drove the machine at a high
    rate of speed, and that he did nothing toward respecting the
    safety of the persons in the vehicle, except to swerve the
    machine to the right to pass the vehicle prima facie proved
    negligence, authorizing a recovery for injuries received by
    the persons in the vehicle in consequence thereof.
3.  Highways—Regulation of Vehicles—Statutes.—Ky. St. sec.
    2739g, limiting the speed of automobiles approaching an inter-
    secting road is enacted, not only for the protection of those
    about to come out of the intersecting road and onto the one
    traversed by the automobile, but also for the protection of
    all persons at or near the intersection on whatever road
    they may be, and evidence that an automobile was operated

National Casket Co. v. Powar.—Same v. Elliott.

at a speed above the maximum speed as it approached and passed the intersecting road and that the automobile frightened a horse driven on the same road, causing it to run away and injure the drivers, showed negligence authorizing a recovery.

4. Highways—Injuries to Travelers—Negligence—Evidence.—In an action for injuries to travelers by their horse at or near an intersecting road becoming frightened by an automobile and running away, the testimony of a witness that the automobile passing him about a quarter of a mile from the place of the accident was going very fast, that he speeded his horse up to 12 miles or more an hour following the automobile, which ran so fast that it had gained 200 yards when it reached the place of the accident, and that the automobile did not slacken as it approached the intersecting road, was admissible to enable the jury to determine not only the speed of the automobile, but whether the operator thereof took any pains to be aware of the peril of the travelers.

5. Damages—Punitive Damages—When Recoverable.—Punitive damages are recoverable in an action for negligence only where the negligence manifests a wanton disregard of the lives or safety of others, or is willful or malicious.

6. Highways—Use by Automobiles—Frightening Team—Punitive Damages.—Where, in an action for injuries to travelers on a highway by their horse becoming frightened by an automobile and running away, the evidence showed that the operator failed to comply with the statutory regulations as to the maximum speed and warning of his approach, and there was nothing to show that the horse showed symptoms of fright until the automobile was so near that it was probably impracticable to stop it, that the operator knew that the horse was frightened, or that he purposely refrained from looking, punitive damages were not recoverable.

7. Appeal and Error—Damages—Erroneous Submission of Punitive Damages—Effect.—Where the verdict in an action for personal injury negligently inflicted did not clearly show that it contained nothing but compensatory damages, the error in authorizing the jury to award punitive damages was reversible.

HELM & HELM and JOHN McCHORD for appellant.

HENRY S. McELROY and PROCTOR K. McELROY for appellees.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

The two foregoing cases arise out of the same tort, and, as they present the same facts and identical questions of law, they are heard together in this court.

An employe of appellant in driving an automobile along the public highway in Marion county failed, so it is alleged, to observe the statutory regulations concerning the movement of such vehicles, by reason of which the horse being driven by the appellees was caused to take fright, and run away, injuring each of appellees. In these suits, brought by appellees against appellants to recover the damages inflicted, appellee, Mrs. Elliott recovered a judgment for $3,500, and Mrs. Powar a judgment for $2,750. These appeals are prosecuted from those judgments.

On the afternoon of November 5, 1908, appellees were driving together in an open buggy along the Lebanon and Danville turnpike road, and close to its intersection with the Gravel Switch and Logan Hill turnpike in Marion county. They intended to turn into the latter, which intersected the former at a right angle. Just as appellees were in the act of turning into the latter road, appellant's employe, Scott Moore, who was driving the automobile, rapidly passed them, coming from the rear and going on out the last-named road. It is claimed by appellees that he was driving his machine at a high rate of speed, and did not give any warning of his approach. For a rod or so before he came alongside the buggy the horse drawing the buggy showed evidence of fright, and, as the machine whipped by, the animal began kicking and running. Appellees were thrown

from the buggy, and each sustained serious and permanent injuries. Moore claims that he did not observe that the horse was frightened, and as he immediately passed beyond the buggy he did not learn for some days afterward that the catastrophe to the ladies had occurred.

The statute regulating the movement of automobiles and motor vehicles in this state is as follows (Ky. St. Sec. 2739g): "Upon approaching a crossing of intersecting public highways, or a bridge, or a sharp curve, or a steep descent, and also in traversing such crossing, bridge, curve or descent, a person operating a motor vehicle shall have it under control, and operate it at a rate of speed no greater than six miles an hour, and in no event greater than is reasonable and proper, having regard to the traffic then on such highway and the safety of the public."

"Upon approaching a person walking in the roadway of a public highway, or a horse or other draft animals, being ridden or driven thereon, a person operating a motor vehicle shall give warning of its approach by signaling with a horn, bell, or other device not calculated to frighten such animal, and use every reasonable precaution to insure the safety of such person or animal, and, in case of horses or other draft animals, to prevent frightening the same, and at once reduce the speed at which such vehicle is being operated and hold same under control, and if such horses or draft animals appear frightened, to not more than one-half the speed permitted by section two, and bring same to a stop if apparently necessary for the safety of such person or animal, having due regard to the safety of passengers in such motor vehicles."

" * * * Every motor vehicle, while in use on a public highway, shall be provided with good and

sufficient brakes and also with a suitable bell, horn or other signal. * * *''

By the seventh subsection of the act (which is the act of March 26, 1904), not only is the driver of the machine guilty of violating the provisions of the act liable to a fine, but is made liable to a civil action to any person injured in his person or damaged in his property by its violation. The act declares the common law of negligence, and adds to it certain standards of care on the part of drivers of the machines which per se constitute negligence, and which, if injury ensues to another using the highway, is a sufficient basis for an action to recover damages for the injury.

One contention made on behalf of appellants on these appeals is that the court should have granted a peremptory instruction to the jury upon the close of the plaintiffs' case to find for the defendants. Counsel, while admitting that the test of this position is whether there is any evidence introduced on the plaintiffs' behalf tending to support their cause of action, yet insist that the testimony of Mr. Manson Isaacs, an intelligent and disinterested witness introduced by the plaintiffs, should be taken as the best evidence of what occurred. Mr. Isaacs was driving along the road in the same direction as appellees were traveling and some 200 yards behind them. He became interested in the speed of the machine as it passed him, and, true to the instinct characterizing many of the men of his state, determined to test the speed of his horse by that of the machine, not without expectation of beating it, or at least holding his own. He was driving a young spirited horse, which in spite of his faith in its speed, was unequal to the test. It may therefore be

reasonably inferred that Mr. Isaac's attention was not a little concentrated upon his horse and the machine, especially upon the former, and consequently did not notice closely the occupants of the buggy nor the exact relation of the events as they transpired. He did not see any evidence of fright on the part of the ladies' horse until after it had passed a rod or so down the cross pike.

From that two propositions are asserted by appellants: One, that the horse did not take fright until it had passed into the cross-road some distance; and, two, that, if it did take fright before, it was so obscured by the bulk of the buggy and those in it that it was not observable by one coming up in the rear. Other evidence on behalf of the plaintiffs was that the horse first showed fright about two rods before leaving the Lebanon and Danville pike; that it pricked up its ears, tossed its head high, and considerably increased its speed, as well as showed other signs of extreme nervousness. Whether appellant Moore saw the animal's condition was a vital fact in the case; and whether, though he did not see it, he might, by the exercise of ordinary care, have seen it, is another pertinent fact. The road was practically straight and level from some distance back before the intersection was reached. That the horse and vehicle as well as the drivers could have been seen and were in fact seen by Moore for some distance before he overtook them there can be no doubt. Seeing them, or their being in view so that they could have been seen by Moore by his exercise of ordinary care, the statute then made it his duty to give warning of his approach by sounding his horn, and, in addition, to "use every reasonable precaution to

insure the safety'' of the occupants of the vehicle, and of the animal they were driving. The evidence for the plaintiffs was that Moore did not sound any warning whatever, that he was driving the machine at a very high rate of speed, and that he did nothing toward respecting the safety of the ladies except swerve to the right so as to well miss their vehicle. These facts presented prima facie a case of negligence. The failure to sound the horn, or other similar contrivance to signal the approach of the car was a violation of the statute, was per se negligence, and if the injury to the plaintiffs was occasioned thereby, being a proximate result of such failure, appellants are liable to respond in damages.

It will be observed that the statute also requires the operator of the machine to slacken its speed to not exceeding six miles an hour when approaching an intersecting road. Appellants contend that this provision could have been meant only for the protection of those about to come out of the intersecting road onto the one being traversed by the machine. That was doubtless one, and perhaps the main, consideration moving the Legislature to the enactment of that requirement. But the language of the section is emphatic and without exception. It will not do for the courts to say that the Legislature meant less than it has plainly said, or that the simple, imperative regulation should not be held to apply for the benefit of all persons at or near the intersection, on whichever road they might be. The regulation is a police act.

It is not unreasonable to presume that the legislative object was the protection of life, limb, and property of all whose safety might be imperiled by the

nonobservance of the particular regulation, and that
it was not unreasonably supposed that persons who
had but recently left the main road, or whose teams
were standing there at or near the intersection, were
also liable to injury if unaware of the approach of the
motor cars and therefore unprepared to care for
their teams or personal safety, as they would be if
the warning were given them.  So it does not seem
material whether the appellees were on the Lebanon
and Danville pike, or had just left it, the regulation
was for their protection, and its nonobservance was
per se negligent as to them.  Therefore the evidence
for the plaintiffs that the machine was speeding at
a rate exceeding six miles an hour as it approached
and passed the intersection, from which their horse
was frightened, ran away, and injured them, shows a
breach of the statute, for which the motorman and
his master are civilly liable.  In this aspect we as-
sume that the machine was being driven at a speed
exceeding six miles an hour, and that the horn was
not sounded, for such was the evidence on behalf of
the plaintiffs.  We, of course, do not decide the fact,
nor intimate a belief on the point.  The assumption
is the inference fairly deducible from the plaintiffs'
evidence, and is resorted to merely as a test of the
motion for peremptory instruction.  The motion was
properly overruled.

Manson Isaacs testified for the plaintiffs that the
machine when it passed him, which was some quarter
of a mile from the point where the accident occurred,
was going very fast, that he immediately speeded his
horse up to 12 miles an hour or more, following the
machine, yet it was running so fast that by the time it
reached the intersecting road it had gained 200 yards
on him.  It is objected by appellants that the testi-

mony was irrelevant and misleading, as it did not show the speed of the machine as it reached the point where the injury occurred. The machine was in sight of the witness for the whole distance. He was attempting, though for another purpose, to test its speed. The fact that it did not slacken, coupled with the evidence as to how fast it was travelling 200 yards before reaching the road intersection, the time intervening being only a few seconds, brought the whole occurrance connectedly before the jury, and enabled them to determine, not only the speed of the machine, but whether it indicated that the motorman acted as if aware of the peril, or took pains to be aware of the peril of the women in the buggy. We think the evidence was relevant.

The principal complaint is against the instruction authorizing the infliction of punitive damages. The instruction reads: "If you shall believe from the evidence that defendant Moore as he approached the intersection of said pike and plaintiff did fail to have his machine under control, and did fail to give any warning of his approach as set out in instruction No. 1, and that by reason of such failure to have said machine under control or to give such warning of its approach he was guilty of gross neglect, and as the direct result thereof, plaintiff's injuries followed, then you may or may not in your own discretion award her punitive damages, not exceeding in all, however, $10,200." Another instruction defined gross negligence as the absence of slight care. It is not every case of gross negligence that warrants the infliction of punitive damages. McHenry Coal Co. v. Sneddon, 98 Ky. 688, 34 S. W. 228, 17 Ky. Law Rep. 1261. It is only where the negligence manifests a wanton disregard of the lives or safety of

others or is willful or malicious that such recovery is allowed. L. & N. R. R. Co. v. Kingman, 35 S. W. 264; 18 Ky. Law Rep. 83; Lexington Ry. Co. v. Fain, 80 S. W. 463, 25 Ky. Law Rep. 2245; Southern Ry. Co. v. Goddard, 121 Ky. 567, 89 S. W. 675, 28 Ky. Law Rep. 527.

The most that can be said of the conduct of Moore from the worst aspect presented by the plaintiffs' evidence is that he failed to comply with the statutory regulations as to six-mile limit of speed at that point, and failed to sound his signal horn. Most horses are now accustomed to the sight and sounds of automobiles, and pay but little attention to them. The nag did not show symptoms of fright until the machine was so near that it was probably impracticable to stop it so as to relieve its apprehension of danger. It is not shown that appellant Moore knew that the horse was frightened, or that he purposely refrained from looking. He simply failed to see what he might have seen by close attention, and the exercise of greater caution. Unless he was aware of the animal's fright, and of the danger to the plaintiffs, or unless the conditions were such as necessarily put him on notice that such conditions would most likely result from a continuation of his course, it can scarcely be said that he wantonly or willfully inflicted the injury on the ladies. The facts fall short of making the case for an instruction allowing punitive damages. Giving it was an error.

Appellees contend that the amount of the verdicts are no more than compensation for their injuries. Perhaps not. But they are quite substantial verdicts. True, the plaintiffs each suffered severe, and likely permanent injuries, the detail of which is harrowing. There is no standard by which the dam-

ages can be accurately measured. We are disinclined to invade the jury's field to say whether the sums awarded were for compensation only, or whether such sums are too much or enough to compensate for the injuries and suffering. In some cases, rare and always the source of more or less misgiving, we have affirmed judgments when instructions allowing punitive damages were awarded but were unauthorized, where the amount of the verdicts indicated so clearly that they contained nothing but compensation that there was not room for doubt on the subject. But such is not this case. For the error in giving that instruction the judgments are each reversed, and the causes remanded for proceedings consistent herewith.

Nunn, C. J. and Settle, J. dissent.