GRANGER *v.* FARRANT.

1. AUTOMOBILES—NEGLIGENCE—PERSONAL INJURIES—EVIDENCE.

While it was material, in a personal injury action, brought for injuries caused by a motor car owned by defendant running into an automobile in which plaintiff was riding, to show the condition of the car owned by defendant after the occurrence, the trial court committed error by receiving in evidence repair tickets from the records of the defendant showing that no such repairs had been afterwards made to the automobile, as plaintiff's evidence tended to show would have been required. The evidence was self-serving in its nature and was incompetent as hearsay.

2. EVIDENCE.

In order that hearsay evidence may be admitted, showing declarations made by a party not against his interest, they must have been made before suit was commenced, and before a controversy originated between the parties.

3. SAME—MEMORANDA—CORRESPONDENCE.

Such cards and a letter which the defendant wrote to a third person regarding repairs, all offered to show that no such repairs as claimed were made on defendant's automobile after the alleged collision, should have been excluded as self-serving.

4. SAME—TRIAL—CHARGE—NEGLIGENCE.

Where plaintiff's evidence tended to show that the defendant's car approached the one in which plaintiff was riding, from the rear, without warning, and passed at an unlawful rate of speed, turning so close to the front of the other car as to strike and force the automobile over an embankment, injuring the plaintiff, it was error to charge the jury that if defendant's car hit the other but did not send it over the embankment the alleged negligence would not be the proximate cause of the injury. Plaintiff was entitled to recover if the defendant drove his car so near that in which the plaintiff was that it caused the driver to swerve too near the edge of the embankment, even though the force of the alleged collision was not sufficient to throw the automobile out of its course.

5. SAME—EVIDENCE—NEGLIGENCE.

> Whether plaintiff's driver was guilty of contributory negligence in not stopping or controlling the car, was a proper issue for the jury.

6. SAME—CONTRIBUTORY NEGLIGENCE—IMPUTING NEGLIGENCE.

> And plaintiff could not recover if the driver of the car in which she was riding by invitation as a guest was guilty of negligence.[1]

Error to Kent; McDonald, J. Submitted November 25, 1913. (Docket No. 133.) Decided March 26, 1914.

Case by Bertha Granger, by her next friend, against Walter S. Farrant for personal injuries. Judgment for defendant. Plaintiff brings error. Reversed.

*Ellis, Colwell & Ellis,* for appellant.

*Dunham & Dunham,* for appellee.

STONE, J. In this case the plaintiff, a married woman, under 21 years of age at the time of bringing suit, seeks to recover damages against the defendant for injuries claimed to have been received on the 30th day of July, 1910, in the afternoon of that day, while the plaintiff was riding, by invitation, with one Frank Skinner and his wife, in a Reo automobile on the highway in Ionia county near Lake Odessa. They were traveling in a northwesterly direction, and, at a railroad crossing of the highway, it is the claim of the plaintiff that defendant, operating and driving a Chalmers automobile, came up behind Skinner's automobile, in which the plaintiff was riding, driving at an unreasonable and unlawful rate of speed, and without warning passed them on the left, then swerved suddenly to the right, ahead of Skinner's automobile, and forced it over an embankment,

---

[1] The question of imputed negligence of driver to passenger is discussed in an extensive note in 8 L. R. A. (N. S.) 597.

throwing the plaintiff out and severely injuring her by breaking her arm and inflicting permanent injuries.

All of the occupants of the Reo car testified, in substance, that the defendant, just as Skinner's automobile was going onto the railroad crossing, without blowing his horn or giving warning, suddenly ran up beside them at the west end of the crossing, and went diagonally across the road in front of the Reo car, striking it, as they judged by the jar and grating sound. There was an intersecting road immediately ahead of them at this point known as the "Lansing" road.

It is the claim of the plaintiff that the Reo car, in which she was riding, crossed the east end of the planks on the railroad crossing, and, in order to follow the road to Lake Odessa, which he desired, it was necessary for Skinner to turn a little to the left. It was while he should have been making this angle that it is claimed the defendant's automobile ran down diagonally across the road in front of him, cutting off all space on the Lake Odessa road.

The declaration, after alleging the duty of defendant, contains the following averments:

"And the said defendant, totally disregarding his duties as provided by statute, and his reasonable duties in the premises, after crossing the said railroad crossing, and at the intersection of the highways, did operate and direct his automobile, which said automobile was then running at the rate of speed of 30 to 40 miles an hour, diagonally across said highway, so that his said automobile struck and came in contact with the front wheel of and otherwise came in contact with the said automobile so driven by the said Frank Skinner and so occupied by the said plaintiff, thereby causing the said automobile so driven by the said Frank Skinner, and so occupied by the said plaintiff, to leave the highway and run down a bank, to wit, 6 feet high, over rough and impassable ground, so that the automobile came to a sudden stop, and the

said plaintiff and the other occupants of the said automobile were thrown from said automobile to the ground.

"And the said defendant, further disregarding his duty in the premises, when he passed the said automobile so run by the said Skinner and occupied by the plaintiff, as aforesaid, did not slow down to a reasonable rate of speed and run in and upon the space at the left side of the middle of the traveled portion of the highway, and in such manner as not to come in contact with or interfere with the peaceable and lawful rights of the said Skinner and the plaintiff, and did not slow down and run his automobile at a reasonable rate of speed, and did not pass through and over the space between the automobile so run by the said Skinner and occupied by the plaintiff and the westerly side of the highway over the space left by said Skinner for that purpose; but, on the contrary, carelessly and negligently, and without any caution, or taking any means to protect the rights of this plaintiff, ran and drove his automobile close to and against and struck the automobile so run by the said Skinner and occupied by the said plaintiff, so that the said automobile run by the said Skinner and occupied by the said plaintiff left the highway and ran down an embankment, thereby causing great injury to this plaintiff as hereinafter set forth.

"And the defendant, further disregarding his duties in the premises, when approaching the automobile so run by the said Skinner, and so occupied by the plaintiff and Mrs. Skinner, gave no warning of his approach, and did not ask or communicate his desire to pass; but, on the contrary, with great force and violence, carelessly and negligently ran his said automobile with great speed at and against the said automobile so run by the said Skinner and occupied by the said plaintiff."

Frank Skinner, the driver of the Reo automobile, testified, among other things, as follows:

"I just got nicely on the railroad track, and I heard a noise at the left-hand side of me. It sounded to me like a motor sounds when you are driving along at a high rate of speed and your engine is speeded up. You release the clutch, your engine takes the surplus

power without anything connected with it, and that is the way it sounded to me, and as I heard it I turned my head, and I saw an automobile aside of me, right onto me, and they seemed to be coming in an angling way across the track towards me, and, just as I got across the track, they hit the front end of our machine, and the blow was pretty hard. It sounded to me like the fenders coming together. And that is the last I knew what it was, until I picked myself up from under the car.

"Q. What effect did it have on the car; where did it go?

"A. It took it right off from the bank, right down into the ditch. I was thrown out of the car, and found myself under the car, under the running board. Mrs. Granger was lying on her back with her head near my feet. * * * This other machine was on the left-hand side of me, and, when it ran across and in front of me, it came so close to the east side of the road that it pushed the sand right down the side of the road that way. It practically shut me off so that I could not turn at all. If my machine ran, it either would have run into that machine or go down off the bank."

Mrs. Eva Skinner, wife of Frank Skinner, speaking of defendant's car, testified, in part, as follows:

"We were just going on the railroad track when I noticed it. I should think that the front of their machine at that time was just about where Mrs. Granger and I sat, even with our back seat. They cut right in ahead of us just after we left the crossing. They ran right towards the front of our machine. I remember that they gave a bound, and it seemed as though their fenders struck ours. I know I heard a noise, and I wondered what would become of us. I heard a noise of the machines coming together; and the next I knew I was going over the bank, and the next was picking myself up."

She then testified that defendant's car did not stop, but pushed on rapidly towards Grand Rapids.

The plaintiff upon this subject testified as follows:

"I was sitting in the Skinner machine on the left-

hand side in the back seat with Mrs. Skinner. I do not know how I happened to notice the machine back of us; do not remember of hearing anything. I just looked around and saw it. Mrs. Skinner spoke about the same time that I looked around about the machine. The next that I saw the automobile that was following us was just before we struck the railroad track. We were just a little way—just a short distance—from the railroad crossing. At that time it was behind us. I looked towards the center. I think Mrs. Skinner looked around when I did. As to the distance I was from the railroad crossing I cannot tell. It seemed to me that we were nearly to the tracks. Then, shortly after that, we heard the machine. It was immediately, and we were then on the tracks. We were on the right-hand side going across the railroad track, I think so, and the other machine was on the left-hand side of us, very close. At that time I noticed a big noise, a very loud noise, and I noticed a terrible bound, and everything else happened at once. I heard the noise and felt a jar. The noise, as I remember it, seemed to me as a metallic sound, a sort of grating. Just an instant, and a jar and everything was all at once. The last I remember was I kind of caught my breath.  *  *  *

"*Q.* What can you say, witness, as to whether or not the machine struck you?

"*A.* Why, I heard the noise and a sound and a jar.

"*Q.* Now, when was the next thing you knew; that you can remember about the transaction?

"*A.* Why, I do not remember any more about that. The next I remember I was in bed."

Witness then described her injuries, and claimed that she received permanent injuries at that time.

To show that the cars came in contact, the plaintiff offered evidence showing the location of the tracks, the condition of the hub cap on the machine in which the plaintiff was riding, and the condition of the fenders; and also showed that they made an immediate effort at Grand Rapids, where the defendant resided and owned a public garage, to see the defendant's machine, but did not succeed, as it appeared that the defendant had secreted his automobile.

On the other hand, the defendant claimed, and gave evidence tending to support his claim, that he did not pass the Skinner car at the place named, but that he passed it before reaching the railroad crossing; that he did not touch or run against the Skinner machine at all, but passed 5 feet away from it, 25 or 30 feet south of the railroad crossing; and that his machine was not broken or injured in any way. The defendant learned on his arrival in Grand Rapids the same day of the injury that information had been conveyed by telephone to police headquarters; that the plaintiff was seriously injured; and that it was claimed the defendant had caused the injury. This suit was begun by *capias ad respondendum,* and defendant arrested thereon on August 8, 1910.

It was conceded that the factory number of the Chalmers automobile, operated on the day in question by the defendant, was 13055. Defendant's said automobile was taken from the public garage on the evening of the accident, and placed in his barn at his residence in Grand Rapids, and remained there nearly all the time until it was sold on the 13th day of August following. As tending to show that this machine was not injured and had no marks upon it, the defendant was permitted, over the objection and exception of the plaintiff, to introduce in evidence certain cards or tickets, which, it was claimed, were made at his garage or place of business, showing when any work was done on a car; that these cards or tickets were kept at defendant's place of business, and were filed in numerical order. Many of these tickets or cards were offered and received in evidence.

Exhibit 20 is a fair sample:

"Repair and Sales Record.
"August 10, 1910.
"Owner: Roadster 13055.
"Instructions: Drain all oil out of motor and put in fresh; clean clutch disk thoroughly with kerosene.

Lubricate clutch properly with about 2½ oil in clutch case, mixed with about ¼ kerosene. Tighten clutch slightly and evenly.

"Date:  ........  Workman:  H. E.  Time:  2 hours.

"Oil ½ pt. K. 3-4.  12 10c.

"Inspected:  H. E.  1 8-15."

The following objection was made by plaintiff's counsel:

"I object to this ticket. I do not know of any case that makes this kind of matter, after the transaction has occurred, competent. What Mr. Farrant did after that time, his own acts or his bookkeeper, does not matter in any way. It is not an outside bookkeeper's business; it is just what Farrant did. It is incompetent evidence, I think what he did is self-serving, matters done by him or his agents after this transaction."

Defendant's counsel:

"I think it competent. It has been held that where regular files are kept connected with a business, where the business is of such volume that regular files are kept, and these files are produced, such as railroad company files, or any business that requires a large number of such things to be made, and requires help to do it, that these are competent evidence.

"*The Court:* I will receive it.

"*Plaintiff's Counsel:* Note an exception."

Another ticket offered and received in evidence bore date the 11th day of August, three days after the case was commenced. It was objected to as a self-serving declaration made by the defendant, or by his help. It was the claim of defendant's attorney that they all referred to work done on the machine.

It appeared that the defendant was the agent at Grand Rapids of the Chalmers Motor Car Company of Detroit; that on the occasion of the injury to the plaintiff the defendant was returning from a visit to the Chalmers Motor Car Company at Detroit; that, while in Detroit, the radiator upon the automobile

which he was driving had been changed by the said company by reason of a leak or defect in the radiator, and one of a different color had been placed upon the machine. Just what materiality there was in this circumstance it is difficult to discover.

The trial court, however, allowed the defendant to introduce in evidence a letter reading as follows:

"W. S. FARRANT.
          "GRAND RAPIDS, MICH., Aug. 10, 1910.
"My Dear James:
     "This is purely personal. I want to get your advice. You remember the exchange of radiators—putting on an unpainted one in place of the one that had been defective and leaking since received. I to-day received invoice R—45847 for labor and expense repairing radiator exchanged on car, net $15.00, and 6 hours' labor $3.00, total $18.00. I do not mind the labor. We do not charge our customers for labor or parts, when they have defective parts. Is this right or is it an error? Tell me how you view it and how you would handle it, and I would appreciate the favor very much, and I will then write to the proper department.
                    "Yours very truly,
                              "FARRANT.
     "Mr. Jean Bemb, Chalmers Motor Co., Detroit, Mich."

This letter was objected to by plaintiff's counsel as irrelevant, immaterial, and a self-serving statement made after the injury of the plaintiff. It was received over the objection and an exception.

The case was submitted to the jury, and in the course of its charge the court instructed the jury as follows:

"It is not necessary for me to say anything further to you about the claims of negligence, because of the theory of the defendant and because it is conceded by the defendant through his attorneys that if he (the defendant) ran his car diagonally across the road from the left side to the right, and struck the Reo car, so as to cause it to be deflected from its course

and to run over the bank, that he was negligent, and is liable in this action for any damage that the plaintiff sustained. I charge you, as a matter of law, that if you find by a fair preponderance of the evidence that the defendant, Walter S. Farrant, handled, managed, and controlled his Chalmers car in the afternoon of July 30, 1910, and drove it diagonally across the highway north of the railroad track, and struck the front hub of the Reo car, so as to cause it to turn to the right and run over the bank, and that the plaintiff suffered injury and damages by reason thereof, then the defendant Farrant was negligent, and is liable to the plaintiff in this action.

"So you will understand, gentlemen of the jury, that as to the first question you have to determine— that is, the alleged negligence of the defendant—the question is: Did the defendant, Walter S. Farrant, run his car diagonally across the highway into the car in which the plaintiff was riding, and by reason of striking it on the left hub, drive it off the road and over the bank? Plaintiff cannot recover unless she convinces you by a fair preponderance of the evidence that the defendant, Farrant, did so negligently drive his car. If you do not find by a fair preponderance of the evidence that the defendant Farrant did so run his car as to strike the Reo car and drive it over the bank, then you need not further consider the case; for in such event your verdict must be no cause of action."

This language was, in substance, reiterated a number of times in the charge. The court, however, called the jury's attention to the statutory duties of a person operating a motor vehicle upon a public highway as to rate of speed and proper management.

There was an averment in the declaration that the conduct of the defendant had been wanton, reckless, and wilful, and the court instructed the jury on that subject as follows:

"These statutory duties and any violation thereof, if you find there were any, you may consider in determining this question of added damages. I have mentioned these things to you for the application that

they had in this case on the question of added damages. They have no application to the first question—the question of defendant's negligence—that is, as to his liability for his negligent act. A violation of these provisions of the statute is evidence of negligence, but under the circumstances of this case, as I have before explained to you, you may consider such violation only in determining that the defendant acted wantonly, wilfully and recklessly.  *  *  *

"And, gentlemen of the jury, I charge you, as a matter of law, that the defendant, Walter S. Farrant, is not here on trial because he did not slow down his automobile, and is not on trial for the purpose of determining whether he did or did not run his car at a reasonable and moderate rate of speed, neither is he on trial for the purpose of determining whether or not he expressed a desire to the occupants of the Reo car to pass, either by tooting his whistle or calling to them and asking the driver, Skinner, to let him pass; that, so far as the defendant is concerned, in the first instance—that is, the alleged negligence of the defendant—your inquiry is limited to the one single question as to whether or not he did so run and operate his car, after crossing the railroad track, as to run it into the Reo car with such force as to drive the Reo car from the highway.

"I told you that these various alleged violations of the statute were to be considered by you as bearing on the question of added damages. On the questions of defendant's negligence in passing the car, I have explained to you that these various statutory duties do not under the circumstances in this case apply."

The jury, after being out for a time, returned into court and asked for further instructions. The following occurred:

"*The Court:* Gentlemen of the jury, are you having some difficulty in regard to the law in this case?

"*Foreman:* We are. If Farrant's car hit this Skinner car, but not hard enough to knock it out of its course, what were your instructions?"

After ascertaining that this was the definite question, the court proceeded as follows:

"Mr. Farrant would not be liable unless his act was the proximate cause of the injury; that is, the cause that produced the injury. I said to you that the plaintiff must convince your minds by a fair preponderance of the evidence, *first*, that the defendant was negligent, and that his negligence was the proximate cause of the injury. Now, if his car hit the other car, but did not send it over the bank—if his car hit the other car, but the hitting of the car did not produce the injury—then, though he were negligent, his negligent act would not be the proximate cause of the injury, and he would not be liable. Do I make that plain to you?

"*A juror:* It is to me."

Thereupon the jury again retired, and, after being absent for a time, returned into court and rendered a verdict of no cause of action, and judgment was entered accordingly for the defendant.

The plaintiff has brought the case here upon writ of error, and, while there are many assignments of error, we shall not find it necessary to consider them all in detail.

(1) By appropriate assignments of error, it is claimed that the court erred in permitting the introduction in evidence of the tickets or cards and letter which have been referred to.

The question as to the condition of these cars after the alleged collision was material. Did the court err in receiving in evidence the cards and letter above mentioned? If this evidence had any materiality whatever, it was its tendency to show the condition of the Chalmers car after the injury complained of. The effort is made by these cards to show by elimination that no repairs were made upon this car, except such as are mentioned in the respective cards, which show nothing by way of repairs to the fenders or the hub caps. It has already been noted that these cards were prepared at defendant's garage after the alleged injury, and some of them after the commencement of

this suit. We think that such cards and letter were incompetent, as well as immaterial, and were self-serving statements made after the fact.

That certain work was done on this car was no evidence that there were not other defects which required repairs, even if the evidence was competent. As was said by this court in *Grand Rapids, etc., R. Co.* v. *Huntley*, 38 Mich. 537, at page 544 (31 Am. Rep. 321) :

"The general rule in regard to other classes of hearsay evidence and statements admitted upon the same principle is that they must have been made *ante litem motam*, which is interpreted to mean not merely before suit brought, but before the controversy exists upon the facts."

In *Vanneter* v. *Crossman*, 42 Mich. 465, at page 468 (4 N. W. 216), this court said:

"The declarations of a party may be given against his own interest, and when a part of an entire statement or conversation is so given, he may adduce whatever has been omitted which bears in any way upon the rest. But he cannot, by collateral statements outside, make evidence for himself"—citing authorities.

See, also, *Kehrig* v. *Peters*, 41 Mich. 475, at page 478 (2 N. W. 801), where this court said:

"There was no error in excluding exculpatory remarks made by Kehrig to third persons, in no way constituting parts of transaction which would give them the character of *res gestæ*. He could not make testimony for himself by telling third persons he was innocent."

See, also, *Dundas* v. *City of Lansing*, 75 Mich. 499 (42 N. W. 1011, 5 L. R. A. 143, 13 Am. St. Rep. 457) ; *Jones* v. *Village of Portland*, 88 Mich. 598, 605 (50 N. W. 731, 16 L. R. A. 437) ; *Baumgardner* v. *Henry*, 131 Mich. 240 (91 N. W. 169) ; *Lord* v. *Savings Bank*, 132 Mich. 510 (93 N. W. 1063) ; *Comstock* v. *Georgetown*

*Township,* 137 Mich. 541, 561 (100 N. W. 788) ; *Drake Coal Co.* v. *Croze,* 165 Mich. 120 (130 N. W. 355).

In the case last cited we undertook to state the rule in this State, and referred to many authorities upon the subject. We there said:

"This court has repeatedly held that a self-serving statement is not admissible on behalf of the party making it, and that the corroborating of the party in a material part of the case by his own statement is not permissible"—citing authorities.

In *Burley* v. *German-American Bank,* 111 U. S. 216 (4 Sup. Ct. 341), it was held that entries in the books of one party to a transaction, not contemporaneous or made in due course of the business as a part of the *res gestæ,* but made after the rights of the other party had become fixed, are not competent evidence.

We are constrained to hold that the trial court erred to the prejudice of the plaintiff in admitting in evidence the cards and letter above referred to.

(2) This brings us to the assignments of error relating to the charge of the court, in connection with that part of the declaration above referred to.

It is true that the evidence on the part of the plaintiff sought to show that the defendant's car collided with the car in which the plaintiff was riding. But the evidence of the plaintiff was not confined to the claim that, by reason of the collision, the car in which the plaintiff was riding was forced or pushed over the embankment. We think it was material for the plaintiff to show that the defendant was operating his car at an unreasonable and unlawful rate of speed, and that, without notice or warning, he came upon and passed the Skinner car, and forced his car across and in front of the Skinner car, in such a manner as to disconcert the driver, and cause his car to go over the embankment, to the injury of the plaintiff; and that defendant might be liable, even if the jury should

have found that the impact was not sufficient to forcibly throw the Skinner car out of its course.

If, for instance, it should appear in a given case that A. unlawfully struck at or hit B. in such a manner as to cause B. impulsively or instinctively, without time to consider, to step back into a deep hole to his injury, he being taken unawares, could it be said that A. was not responsible for the injury? So here, had the jury found that, by reason of the defendant bringing his car in contact with the Reo car, Skinner was taken unawares, and, seeking to avoid injury to the defendant's car, he was compelled to go so near the embankment as to lose his balance and go over, can it be said that there was no liability on the part of the defendant? We think not. We think that the court, in its instructions, narrowed the issue to the prejudice of the plaintiff's case, and it is apparent from the colloquy between the court and jury, at the time they returned for further instructions, that they were having difficulty upon the identical point we are here considering. We think it was competent for the jury, under the evidence and the law, to consider the course and conduct pursued by the defendant, as bearing upon his negligence, and that there might have been a recovery if the jury found that the defendant negligently hit the Skinner car, but not with force sufficient to push it over the embankment. If the jury became satisfied that the coming in contact with the Skinner car, by improperly swerving to the right on the part of the defendant, was the proximate cause of the injury, then, we think, the plaintiff might recover in this case, even if the car in which she was riding was not pushed over the embankment by the defendant.

The evident object of the statute regulating the driving of automobiles in public highways was to prevent danger of collision and like accidents which are

likely to occur where the statute regulations are not observed. *Potter* v. *Moran,* 61 Mich. 60 (27 N. W. 854).

In *National Casket Co.* v. *Powar,* 137 Ky. 156 (125 S. W. 279), it was held that the statute of Kentucky, similar to ours, limiting and regulating the speed of automobiles approaching the intersection of highways, and requiring warnings of approaching travelers, is declaratory of the common law of negligence, and adds to it certain standards of care on the part of operators of automobiles, and that a violation thereof is negligence *per se,* and forms a sufficient basis for an action for injuries caused thereby, to another using the highways. Probably the better rule is that such violation would be evidence of negligence. The only matter left to the jury by the trial court was the force of the blow or collision. In this we think there was error.

The trial court seemed to be of the opinion that the immediate cause of the injury was the car running over the bank, and that this was the proximate cause of the injury. We think the proximate cause of the injury may have been, as above indicated, that which preceded the going over the embankment, and that the defendant cannot evade liability, if it is made to appear that the injury was the natural result of his negligent conduct in thus causing the collision.

Whether the plaintiff's driver, Skinner, was guilty of contributory negligence in not stopping or controlling his car was, we think, a fair question for the jury, under proper instructions; and, if the jury should find the driver was guilty of contributory negligence, such negligence might, under our decisions, be imputed to the plaintiff. *Colborne* v. *Railway,* 177 Mich. 139 (143 N. W. 32) ; *Mullen* v. *City of Owosso,* 100 Mich. 103 (58 N. W. 663, 23 L. R. A. 693, 43 Am. St. Rep. 436).

In our opinion the court erred in thus narrowing the issue, and the same was prejudicial error.

The other questions urged by appellant are not likely to arise upon a new trial, in view of what we have already said.

For the errors pointed out, the judgment of the circuit court is reversed, and a new trial granted.

McALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.